### ALMS & DOEPKE V. JAMES FITTON, ASSIGNEE.

Distribution of costs, commissions and attorney's fees in assignment for benefit of creditors among lienholders and general creditors.

ERROR to the court of common pleas of Butler county.

SMITH, J.

The facts in the case, as they appear from the finding and judgment of the court of common pleas, are substantially as follows:

Shank executed to various persons chattel mortgages on a stock of goods in Hamilton, then owned by him, all of the mortgages standing on the same footing. Afterwards he made an assignment of this and other property which was unencumbered, to Fitton, for the benefit of his creditors. The whole of the property was sold by the assignee.

That which was covered by the mortgages realized the sum of................................$23,156 20
That which was unincumbered, the sum of.......................................... 2,440 39

In all................ ...............................................................................$25,596 89

The expenses of the trust, including the taxes upon the property, the expenses of caring for and selling it, the commission and the allowances to the assignee for his services about the same, including the allowances to him for attorney's fees, were..................................................................................... ........ 3,711 39
Leaving for the payment of the debts of the assignor...............................$21,885 50
The amount due on the mortgage claims is not separately found, but other statements in the finding show that it was......................................................... 17,960 08

Leaving a balance in the hands of assignee after paying all costs, expenses, taxes, etc., and the mortgage debts of...................................... .................. $3,925 42.

Of which $2,440.30 was from unincumbered property, and $1,485.03 was the balance from mortgaged property.

As the amount of the unsecured claims is over $20,000.00, it is manifest that the balance of $3,925.42 is not sufficient to pay them in full.

The judgment of the court of common pleas, so far as it is material to the question before us, was, that the proceeds of the mortgaged property be applied first to the payment of the full amount of the mortgages thereon, and second (there being a residue sufficient to do this), to the payment of all the costs and expenses of the trust, and that what was left of the proceeds of the mortgaged property, viz., $1,485.03, with the proceeds of the unincumbered property, viz., $2,440.39, be paid to the unsecured creditors *pro rata*.

The claim of the plaintiff in error is, that this distribution was wrong; that the mortgagees should have been adjudged to pay and contribute ratably, on the amount of the claims held by them, towards the payment of all the costs and expenses of the management of the mortgaged property, including commissions and allowances to the assignee for services about the same, and for his attorney's fees thereon and the taxes on the same, and that no part thereof should be paid from the residue of the proceeds of the mortgaged property after paying the principal and interest due the mortgagees on their claims.

The evidence upon which the court acted, if any, is not before us, and the only error assigned is, that the conclusions of law of the court are not justified by the finding of facts.

So far as we know, in all matters other than the settlement of estates by assignees, it has been the general practice of the courts of the state, when a person having a lien on real or personal estate, has by action had the property sold

to pay it, that the order would be for the costs of the proceeding (unless there were special reasons for a different rule), to be paid from the fund so produced, before giving to the lienholder the amount of his claim; so that, if the proceeds were sufficient to pay both, he received his claim without reduction; if not, the costs would still be paid in effect by him, and he might collect from the debtor, by execution, or otherwise, the balance left due on his claim.

The statute regulating the distribution of the proceeds of real estate sold by an executor or administrator to pay the debts of his testate or intestate, section 6165, Revised Statutes, provides that the costs of the case and the commissions of the administrator on the money be first paid, and then the liens in the order of their priority. And such also seems to be the policy and meaning of our statutes as to insolvent debtors, as apparently settled by the supreme court in the case of *McLain* v. *Simington*, 37 Ohio St., 660. In effect, it is there held, that when there are funds, as to which different parties have different interests, or liens, that each of these funds must pay its own costs and expenses, and that one must not be called upon to contribute to the payment of costs or expenses incurred with reference thereto in which it had no interest. In the fourth and fifth paragraphs of the syllabus, it is stated thus that the expenses in selling the attached property (one of two separate funds), "should be paid out of the proceeds of such property, and that the expenses" (including commissions) "of selling the mortgaged property" (the other of such funds), "should be paid out of the proceeds of the real estate so mortgaged."

Under the principle of this decision it would seem clear in the case before us, there being sufficient of the proceeds of the mortgaged property to do it, that the expenses and costs of preserving and selling it, including the taxes thereon and commissions of the assignee, should be paid from the fund. If it was not sufficient to do this, then it would be manifestly unjust to call upon another fund, say that arising from the sale of unincumbered property, to do it; for this would be to take that upon which one set of creditors had a special claim, to pay costs and expenses upon a fund in which they had no interest. What should be the rule in a case of that kind, that is, where the property covered by liens is not sufficient to pay all of them, when the mortgagees or lienholders on particular property have different priorities, is a question of doubt, and as to which there is perhaps a difference in the practice of courts in this state; that is, whether those who come first in order are entitled to be first paid, without deduction for costs of the sale and assignee's commission, and the burden of these be placed on those who are last in priority; or whether the lienholders shall contribute thereto ratably without respect to priority.

In one case in Warren county, while I was on the common pleas bench, the question was presented to me, and believing that the court had the right, as in all equity cases, to apportion the costs according to priority of equity, and being of the opinion that it would not be right to require the person having the last lien which would be reached, in effect to pay all these expenses, I adjudged, that as to attorney's fees at least, paid by the assignee, and perhaps as to a part of some other of the costs of the assignee for administering the fund, the prior lienholders should pay ratably with the others, on the ground that the attorney's fees at least were rendered in part for their benefit. But that as to the general costs, the ordinary rule of practice and of the statute should be followed. This case was taken on error to the district court and affirmed, whether on the ground that the principal was right, or that it was a matter of legal discretion with the court, which would not be interfered with unless it was abused, I know not. I still think as do my associates, that the law ought to be, at least as to attorney's fees, in a case of this kind, that the lienholders should ratably contribute thereto. But we understand the decision in 37th Ohio St., decided since that time, to be rather against this, for it may be claimed that the allowance of attorney's fees, which, like other costs, expenses and commissions, are to be paid before a dividend is

made, must first come from that fund, and this would seem to result in allowing the lienholders to be paid in the order of priority.

At all events, in this case we do not see, on the facts as found by the court, and in the absence of the evidence upon which the court acted, any error in the order made on this point for which the judgment should be reversed, but that on the other hand it was in conformity with the law and the decision of the supreme court.

*Thomas Millikin*, for Plaintiff in Error.

*Morey, Andrews & Morey*, for Defendants in Error.